JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

18-CV-1107

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

18   1107

## I. (a) PLAINTIFFS
Rena Abran, Individually, and as Mother and as Administrator of the Estate of Gene Wilson, Deceased
1622 S. Lindenwood Street, Philadelphia, PA 19143

## DEFENDANTS
City of Philadelphia, Blanch Carney Commissioner of Philadelphia Prison System, Gerald May, Warden Curran Fromhold Correctional Facility, Nancy Giannetta, Warden Alternative and Special Detention

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Troy H. Wilson, Esquire, LLC
Troy H. Wilson, Esquire
215 S. Broad Street, 2nd Floor, Philadelphia, PA 19107

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983
Brief description of cause:
Wrongful Death

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions:)*
JUDGE _____   DOCKET NUMBER _____

MAR 15 2018

DATE   3/15/18

SIGNATURE OF ATTORNEY OF RECORD
*Troy H. Wilson*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**MSG**

## CIVIL COVER SHEET
## CONTINUED

18   1107

### I. DEFENDANTS

Center, William Lawton, Warden, Philadelphia House of Corrections,
Troy Fearon, Correctional Officer Philadelphia House of Corrections, and
John/Jane Does 1 through 13, individually and their capacities jointly, severally,
And/or in the alternative
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Rena Abran, Individually and as Mother and
as Administrator of the Estate of Gene Wilson  :

      v.  :

City of Philadelphia, etal  :

CIVIL ACTION

**18**    **1 1 0 7**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

| | | |
|---|---|---|
| 3/15/18 | Troy H. Wa— | P (aintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-985-4566 | 215-985-4607 | troyhwilsonesg@att.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAR 15 2018

18 1107

UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: 1622 S. Lindenwood Street, Philadelphia, PA 19143

Address of Defendant: 1515 Arch Street, 14th Floor, Philadelphia, PA 19102

Place of Accident, Incident or Transaction: Philadelphia House of Corrections

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))　　Yes☐　No☒

Does this case involve multidistrict litigation possibilities?　　Yes☐　No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

　　Yes☐　No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

　　Yes☐　No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

　　Yes☐　No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

　　Yes☐　No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
　　(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
　　(Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Troy H. Wilson , counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE 3/15/18　　Troy H. Wilson　　47024 MAR 15 2018

Attorney-at-Law　　Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 3/15/18　　_____　　47024

Attorney-at-Law　　Attorney I.D.#

CIV. 609 (5/2012)



#448 00

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

Rena Abran, Individually, and as Mother :
and as Administrator of the Estate of :
GENE WILSON, deceased : **18    1107**
1622 S. Lindenwood Street
Philadelphia, PA 19143 : Civil Action No. 18-
              Plaintiff,

       vs. :

CITY OF PHILADELPHIA :
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
       and
BLANCHE CARNEY, Commissioner of :
Philadelphia Prison System/Philadelphia
Department of Prisons, individually and :
in Her Official Capacity
1515 Arch Street, 14th Floor :
Philadelphia, PA 19102
       and :
GERALD MAY, Warden,
Curran-Fromhold Correctional Facility,
Philadelphia Prison System/Philadelphia :
Department of Prisons, individually and
in his Official Capacity
1515 Arch Street, 14th Floor :
Philadelphia, PA 19102
       and
NANCY GIANNETTA, Warden :
Alternative and Special Detention Center
a/d/b ASD, Philadelphia Prison System/
Philadelphia Department of Prisons, :
individually and in his Official Capacity
1515 Arch Street, 14th Floor :
Philadelphia, PA 19102

       and :
WILLIAM LAWTON, Warden,
Philadelphia House of Corrections
Philadelphia Prison System/Philadelphia :
Department of Prisons, individually and
in his Official Capacity



FILED
MAR 15 2018
By KATE BARKMAN, Clerk
Dep. Clerk

1515 Arch Street, 14th Floor          :
Philadelphia, PA 19102
          and                                    :
TROY FEARON, Correctional Officer,
BADGE#:5648, Philadelphia House of
Corrections, Philadelphia Prison
System/Philadelphia Department of Prisons, :
individually and in his Official Capacity
          and                                    :
JOHN/JANE DOES 1 through 13,
individually and in their official capacities,
jointly, severally, and/or in the alternative
                              Defendants.   :

## COMPLAINT

## I. JURISDICTION

1.    Plaintiff invokes jurisdiction pursuant to 28 U.S.C. § 1331 as the claims raise federal

questions under 42 U.S.C. § 1983. Plaintiff further invokes supplemental jurisdiction pursuant to

28 U.S.C. § 1367 for claims arising under state law as these claims form part of the same case

and controversy as the claims brought under 42 U.S.C. § 1983.

2.    Venue is appropriately laid in the Eastern District of Pennsylvania pursuant to 28

U.S.C. §1391(b) as it is the judicial district in which the claims asserted herein arose.

## II. PARTIES

3.    Plaintiff, Rene Abran, is the natural mother of Gene Wilson, deceased, and is an

adult person and citizen of the Commonwealth of Pennsylvania residing at 1622 Lindenwood

Street, Philadelphia, PA 19143.

4.    Plaintiff, Rena Abran, is the Administrator of the Estate of Gene Wilson, deceased,

having been so appointed by the Philadelphia Register of Wills on April 22, 2016.  (See attached

Letters of Administration as Exhibit "A")

5. Gene Wilson, the plaintiff, decedent, was born on September 18, 1969, and died on March 26, 2016, while in custody at the Philadelphia House of Corrections Prison Facility.

6. Defendant, City of Philadelphia (hereinafter referred to as "City"), at all times relevant hereto, is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Prison System/Philadelphia Department of Prisons and had the responsibility of adopting policies, implementing procedures, and practices which would create an environment whereby inmates would be safe.

7. Defendant, Blanche Carney (hereinafter referred to as "Commissioner Carney"), is an adult individual who, at all times relevant hereto, was the Commissioner for the Philadelphia Prison System of the City of Philadelphia and acting under the color of law and color of her authority as Philadelphia Prison Commissioner of the City fo Philadelphia. She is sued in her individual and official capacities.

8. Defendant, Gerald May, (hereinafter referred to as "CFCF Warden"), is an adult individual who, at all times relevant hereto, was the Warden for the Curran-Fromhold Correctional Facility for the Prison System of the City of Philadelphia and acting under the color of law and color of his/her authority as the Warden of the Curran-Fromhold Correctional Facility for the Philadelphia Prison System/Philadelphia Department of Prison. He/She is sued in his/her individual and official capacities.

9. Defendant, Nancy Giannetta, (hereinafter referred to as "ASD Warden"), is an adult individual who, at all times relevant hereto, was the Warden for the Alternative and Special Detention Center for the Prison System of the City of Philadelphia and acting under the color of law and color of his/her authority as the Warden of the Alternative and Special Detention Center for the Philadelphia Prison System/Philadelphia Department of Prison. He/She is sued in his/her

individual and official capacities.

10. Defendant, William Lawton (hereinafter referred to as "HOC Warden"), is an adult individual who, at all times relevant hereto, was the Warden for the Philadelphia House of Corrections for the Prison System of the City of Philadelphia and acting under the color of law and color of his/her authority as the Warden of the Philadelphia House of Corrections for the Philadelphia Prison System/Philadelphia Department of Prison. He/She is sued in his/her individual and official capacities.

11. Defendant, Correctional Officer Troy Fearon, Badge#:5648 (hereinafter referred to as "Fearon"), is an adult individual who, at all times relevant hereto, is and/or was a Correctional Officer for the City of Philadelphia and acted under the color of law. He is being sued in both his individual and official capacities.

12. Upon information and belief, Defendant Fearon is an adult person and resident of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant, Fearon, was employed by Defendant, City of Philadelphia and Philadelphia Prison System/Philadelphia Department of Prison as a correctional officer at the House of Corrections Facility.

13. At all times relevant hereto, Defendant, the City of Philadelphia and Philadelphia Prison System/Philadelphia Department of Prison was acting by and through its actual and/or ostensible agents, servants, and/or employees including Defendant, Correctional Officer Fearon, Commissioner Blanche Carney, CFCF·Warden Gerald May, ASD Warden Nancy Giannetta, HOC Warden William Lawton and other personnel whose activities and conduct with regard to Gene Wilson, deceased, are presently known only to the Defendants, but not to the Plaintiffs, after reasonable investigation.

14. Plaintiff is unaware of the true names and capacities of those defendants sued as

John/Jane Does 1 through 13 and therefore sue these defendants using their fictitious names. Plaintiff will amend this complaint to allege each unknown other named defendants' true names and capacities when the information becomes known. These defendants were employed by the City of Philadelphia Prison System/Philadelphia Department of Prisons. Plaintiff is informed and believes that each of these unknown named defendants are legally responsible and liable for the incident, injuries and damages set forth here, and that each of these defendants legally caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, wanton or despicable, malicious and willful misconduct as described below. At the time of Wilson's death, these defendants were employed by the City of Philadelphia Prison System/Philadelphia Department of Prisons and assigned to the Curran-Fromhold Correctional Facility, Alternative and Special Detention Center and the Philadelphia House of Corrections in Philadelphia, Pennsylvania.

## III. FACTUAL ALLEGATIONS

15. On or about March 21, 2016, Gene Wilson, deceased entered into a Negotiated Guilty Plea for second offense DUI charge and was sentenced to ten (10) days confinement with immediate parole to eighty (80) days House Arrest after ten (10) days confinement in county custody by the Honorable Judge Frank T. Brady.

16. On or about March 21, 2016, at approximately 5:00p.m., Gene Wilson, deceased, was taken into custody at the Curran-Fromhold Correctional Facility for said DUI criminal case.

17. During said intake process, Gene Wilson was required to have been screened for physical and psychological problems and for a determination as to whether he posed a suicide risk.

18. On or about March 21, 2016, and at all time relevant through March 26, 2016, personnel at Curran Fromhold Correctional Facility, Alternative and Special Detention Center and House of Corrections were required to keep Gene Wilson safe and free from physical injury, harm, or death.

19. On or about March 21, 2016, and at all time relevant through March 26, 2016, personnel at Curran Fromhold Correctional Facility, Alternative and Special Detention Center and House of Corrections were required to keep Gene Wilson safe and free from psychological injury or harm.

20. On or about March 21, 2016, and at all time relevant through March 26, 2016, personnel at Curran Fromhold Correctional Facility, Alternative and Special Detention Center and House of Corrections were required to screen and evaluate Gene Wilson on an ongoing basis.

21. On or about March 21, 2016, and at all time relevant through March 26, 2016, Curran Fromhold Correctional Facility, Alternative and Special Detention Center and House of Corrections was required to train its personnel on the method and means of evaluating persons placed in custody to keep them safe from physical or psychological injury, harm, or death.

22. On or about March 21, 2016, and at all time relevant through March 26, 2016, personnel at Curran Fromhold Correctional Facility, Alternative and Special Detention Center and House of Corrections were required to screen and evaluate the mental status of persons placed in custody.

23. At all times relevant hereto, any and all screening for Gene Wilson, deceased, was inadequate, incomplete and ineffective. Said prison employee responsible for processing Gene Wilson at intake failed to properly and completely fill out the Detainee's Medical Checklist form

and failed to obtain Gene Wilson's signature, attesting to the accuracy of the information which was included on said form.

24. Additionally, on or about March 23, 2016, at approximately 1:57p.m., Gene Wilson, deceased, was also seen at the CFCF medical facility where he also received a Behavioral Health screening. Said prison employee responsible for processing Gene Wilson at said CFCF medical facility/intake failed to properly and completely fill out the Detainee's Medical Checklist form and failed to obtain Gene Wilson's signature, attesting to the accuracy of the information which was included on said form.

25. On or about March 23, 2016, at approximately 11:00p.m., a telephone appointment was made to transfer Gene Wilson, deceased, to Alternative and Special Detention Center (ASD), on March 24, 2016.

26. On or about March 24, 2016, at approximately 11:38p.m., Gene Wilson, deceased, was seen in triage at the ASD facility for complaints of vomiting and nausea. It was also noted that Gene Wilson, deceased, had a nose bleed . While being examined he informed the chief medical officer (CMO) that he needed to get out of the jail, he was experiencing anxiety and stress, felt unsafe, felt nauseous, and vomited three times.

27. On or about this date and time Gene Wilson, deceased, was also seen, by prison staff, muttering to himself, talking to himself incoherently and dressed in a disheveled state. At this time prison staff noted this odd behavior yet did nothing to address Gene Wilson's mental state.

28. On or about March 25, 2016, at approximately 12:53p.m., Gene Wilson, deceased, was seen in triage at the ASD facility again for continued complaints of abdominal pain. Yet the ASD facility made no mention of Gene Wilson's altered mental state and/or suicidal ideations.

29. While being examined it was noted that Gene Wilson, deceased had an increased

blood pressure of 186/108, that he was crying and hunched over due to the tremendous amount of pain he was experiencing to his abdomen, and that he was in acute distress. Due to his symptoms Gene Wilson, deceased, was sent to Aria Frankford/Torresdale emergency room.

30. Gene Wilson, deceased, was seen, examined at Aria Frankford/Torresdale emergency room and immediately returned to prison.

31. At approximately 7:00p.m., Gene Wilson, deceased, returned to ASD facility and followed up with the chief medical officer (CMO) regarding his emergency room visit.

32. At all times relevant hereto, Gene Wilson, deceased informed the chief medical officer (CMO) of his emergency room visit, however, he also informed the CMO that he did not want to go back to his cell because he was afraid and felt unsafe.

33. On or about March 25, 2016 at approximately 9:18p.m., Gene Wilson, deceased was, for some unspecified reason, ordered to be placed in segregation from the rest of the prison population, despite his aforementioned changed, odd behavior and incoherent and potential suicidal ideation.

34. On or about March 25, 2016, at approximately 10:24p.m was seen and assessed by Olumide Oluwabusi, MD because he informed the doctor that he was scared.

35. Dr. Oluwabusi conducted a psychiatric evaluation on Gene Wilson, deceased, and noted that he was feeling fearful and anxious. After his evaluation, Gene Wilson, deceased was, negligently, carelessly and recklessly, cleared for protective custody placement despite all of Gene Wilson's aforementioned behavior.

36. On or about March 25, 2016, Gene Wilson, deceased was negligently, carelessly and recklessly placed into solitary confinement in a cell that abutted two empty cells on either side of Gene Wilson's prison cell.

a. Moreover, Gene Wilson, deceased, was placed into a cell containing exposed crossbars, which could and had been used by suicidal detainees as hanging points in the past and said prison knew or should have known this yet failed to take measures and/or precautions to prevent the same.

37. Additionally, the positioning of Gene Wilson's cell made it physically impossible to be viewed, surveilled or otherwise seen by prison guards or prison officials responsible for overseeing, reviewing or inspecting Gene Wilson's prison cell.

38. Additionally, Gene Wilson was not placed into a suicide prevention cell whatsoever.

39. On or about March 26, 2016, at approximately 6:00a.m., Gene Wilson, deceased, was last observed to be alive.

40. On or about March 26, 2016, at approximately 6:30a.m., Gene Wilson, deceased, was found, by Correctional Officer Fearon, hanging by the neck with a bed sheet tied to a rod above the toilet in his cell at the Philadelphia House of Corrections.

41. Despite correctional prison requirements that detainees in holding cells be consistently checked periodically no prison correctional officers adequately and/or sufficiently checked on or monitored Gene Wilson prior to his untimely demise.

42. At all times relevant to this matter, defendants' failure to property monitor Gene Wilson, deceased should have been checked on, on an ongoing basis, due to the fact that he indicated he was scared, fearful, and anxious and had, prior to placement in solitary confinement been seen acting erratically.

43. Once discovered, CPR was performed on Wilson, he was unresponsive, cold to touch with nailbeds cyanotic, with his tongue partially out of his mouth. His tongue could not be pushed back into his mouth so oxygen via nasan cannula at 41/min was administered.

44. 911 was called and emergency medical services was summoned. EMS arrived at the scene at approximately 6:50a.m., connected Wilson to a heart monitor and pronounced him dead at 6:52a.m.

45. The medical examiner ruled Wilson's death a suieide by hanging.

46. From the time of his incarceration on the evening of March 21, 2016, to his death on the morning of March 26, 2016, Wilson was under the care, custody and control of the Philadelphia Prison System/Philadelphia Department of Prisons.

47. Defendants were responsible for Wilson's protection, safety, care, well-being and life while he was in their custody.

48. During the time that Wilson was in Defendants' custody, they knew, or should have known that he needed mental health care and was in a suicidal condition, both of which should have been detected by Defendants upon use of reasonable care.

49. Prior to March 21, 2016, all Defendants knew of a pattern of suicides and suicide attempts by detainees in jail cells throughout the City of Philadelphia.

50. Prior to Gene Wilson's hanging, the Defendants' knew or should have known that other suicides were also attempted by detainees using their bed sheets as ligatures and tying them to the exposed rod over a prison cell toilet yet the Defendants' consistently and indifferently failed to take the proper precautions to stop said suicides and/or attempted suicides.

51. As a direct result of Defendants' conduct described above, Wilson suffered great personal injury and felt great pain and suffering between the time of his suicide attempt began through the time of his death.

52. As further result of the Defendants conduct, Wilson's life ended, which resulted in any potential loss of earnings and income, pain and suffering, and funeral, burial, medical and

estate administration expenses.

53. Wilson did not bring action for his personal injuries during his lifetime and no other action for the death of Decedent has been commenced against defendants.

54. Defendants did not reasonably or in good faith believe that their conduct toward Wilson was lawful, privileged, or otherwise permissible under the laws or constitutions of the United States and the Commonwealth of Pennsylvania.

## IV. COUNT I:
## DEPRIVATION OF FEDERALLY PROTECTED
## RIGHTS AS TO ALL DEFENDANTS

55. Plaintiff incorporates by reference paragraphs one through fifty-four (1-54) of the instant Complaint.

56. At all times relevant hereto, Defendants, City of Philadelphia, Blanche Carney, Commissioner, Gerald May, Warden of CFCF, Nancy Giannetta, Warden of ASD, and William Lawton, Warden of HOC, acted and/or failed to act by and through its employees, workers, servants and other agents, all in the course and scope of their employment.

57. Each of the Defendants had a duty to identify, monitor and safeguard suicidal, or emotionally disturbed inmates, including Wilson, and to protect Wilson and other inmates from harm, injury or death, self-inflicted or otherwise.

58. Defendants breached the duty of care owed to Wilson, acted with actual malice and willful misconduct and were deliberately indifferent to Wilson's Fourth and Fourteenth Amendment rights by:

(a) failing to properly monitor Wilson and to protect him from harming himself;

(b) failing to follow its own internal guidelines for monitoring inmates;

( c) failing to properly screen and properly recognize potentially suicidal inmates, such as Wilson;

( d) failing to place Wilson on an appropriate and effective suicide watch;

( e) failing to have Wilson evaluated by medical staff, and transfer to the appropriate mental health facility, as warranted;

(f) failing to remedy conditions that posed known suicidal hazards to inmates such as Wilson, including the elimination of exposed crossbars, which had been used in attempted suicides in the past;

(g) failing to take other remedial measures, such as installing surveillance cameras for continuous monitoring in cells susceptible to and having a high rate of suicide attempts;

(h) failing to provide Wilson with reasonable safeguards and other precautions to assure his safety.

(I) failing to create or implement an adequate suicide prevention system; and

(j) failing to train officers and other employees who interacted with inmates to properly screen and properly recognize potentially suicidal detainees, such as Wilson.

59.  Wilson's suicide, and the injuries he suffered prior to his death were the direct and

proximate result of the conduct of the Defendants alleged above.

60.  In the events alleged above, Defendant's Commissioner Blanche Carney, CFCF

Warden Gerald May, ASD Warden Nancy Giannetta, and HOC Warden William Lawton, acted

contrary to law, and intentionally, willfully, wantonly, and unreasonably deprived Gene Wilson

of his rights, privileges, and immunities secured by the U.S. Constitution and 42 U.S.C. § 1983.

61.  The above-described acts and omissions by Defendants demonstrated a deliberate

indifference to and conscious disregard for the constitutional rights and safety of Gene Wilson.

62.  On or about March 21, 2016 to March 26, 2016, at various points in time, Gene

Wilson was not adequately monitored while in custody.

63.  On or about March 21, 2016 to March 26, 2016, Gerald May, Warden, Curran

Fromhold Correctional Facility personnel, including but not limited to Defendants,

Commissioner Blanche Carney, ASD Warden Nancy Giannetta, and HOC Warden William

Lawton, were willful, wanton and reckless in failing to provide adequate monitoring of Gene

Wilson to keep him safe and secure.

64. On or about March 21, 2016 to March 26, 2016, Gerald May Warden, Curran

Fromhold Correctional Facility personnel, including but not limited to Defendants Commissioner

Blanche Carney, ASD Warden Nancy Giannetta, and HOC Warden William Lawton, were

willful, wanton, and reckless in exhibiting a conscious disregard for the safety of Gene Wilson in

failing to keep him free from injury, harm and death.

65. On or about March 21, 2016 to March 26, 2016, Gerald May Warden, Curran

Fromhold Correctional Facility personnel, including but not limited to Defendants Commissioner

Blanche Carney, ASD Warden Nancy Giannetta, and HOC Warden William Lawton, were

willful, wanton, and reckless in not providing adequate medical care and attention to Gene

Wilson when he was found injured in his cell.

66. As a direct and proximate result of the foregoing, Defendants, Commissioner

Blanche Carney, CFCF Warden Gerald May, ASD Warden Nancy Giannetta, and HOC Warden

William Lawton, individually and as an agent and/or employee of the City of Philadelphia, and

the City of Philadelphia Prison System/Philadelphia Department of Prisons, deprived Gene

Wilson of his rights and privileges as a citizen of the United States and caused Gene Wilson to

suffer injury and death of which has caused the general damages requested by Plaintiff in an

amount in excess of the applicable jurisdictional amount, to be proven at trial.

67. The actions of all Defendants, including all John Does, manifested a deliberate

indifference to Wilson's constitutional rights in violation of the Fourth and Fourteenth

Amendments to the United States Constitution.

68. By reason of the aforesaid violation of Wilson's rights, Plaintiffs are entitled to recover damages under 42 U.S.C. § 1983.

69. By reason of the aforesaid violation of Wilson's rights, Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## V. COUNT II:
## DEPRIVATION OF FEDERALLY PROTECTED RIGHT AS TO THE CITY OF PHILADELPHIA AND COMMISSIONER CARNEY

70. Plaintiff incorporates by reference paragraphs one through sixty-nine (1-69) of the instant Complaint.

71. Defendants City of Philadelphia and Commissioner Carney are liable for the deprivation of Wilson's federally protected rights by Warden Gerald May Warden's from CFCF, Warden Nancy Giannetta from ASD and Warden William Lawton from HOC, as described in the First Cause of Action.

72. At all relevant times Defendant, Commissioner Carney, was the highest ranking police official in the Philadelphia Prison System/Philadelphia Department of Prisons. She was responsible for:

(a) establishing policies, procedures, practices, protocols and regulations for the conduct of all employees of her prison system/prison department, including policies, procedures, practices, protocols and safeguards for suicide risk assessment and suicide prevention; and

(b) supervising, training and disciplining officers who interact with inmates, including supervising and training officers to (1) provide for inmates' protection, well being,

safety and care, (2) screen for and detect potentially suicidal inmates, and (3) prevent inmates suicides.

73. At all relevant times, Defendant, William Lawton, Warden of HOC was responsible for the command and operation of the House of Corrections. He was responsible for establishing and/or implementing policies for the operation of the House of Corrections and for the protection, safety and care of inmates in his district's custody.

74. At the time of the incident described above, the City of Philadelphia, Commissioner Carney and William Lawton, Warden of HOC had developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of inmates in their custody, which caused Wilson's rights to be violated.

75. It was the policy and/or custom of the City of Philadelphia, Commissioner Carney and William Lawton, Warden of HOC to inadequately and improperly supervise and train its correctional officers and staff to:

(a) properly process, screen and recognize potentially suicidal inmates;

(b) properly monitor and observe inmates;

( c) properly assign suicidal inmates to cells without known suicide hazards; and to otherwise maintain a safe environment for inmates. This custom of improper training and supervision resulted in the defendant officers' conduct that exhibited deliberate indifference to the constitutional rights of Wilson.

76. Defendants City of Philadelphia, Commissioner Carney and William Lawton, Warden of HOC repeatedly and knowingly failed to enforce the laws of the United States, the Commonwealth of Pennsylvania and the regulations of the City of Philadelphia of pertaining to the protection, care and safety of inmates, resulting in the belief by officers at the HOC that their

actions would not be properly monitored by supervisory officers and that their misconduct and deliberate indifference to the protection, safety and care of inmates would not be investigated or sanctioned, but would be tolerated, condoned and justified by their superiors.

77. Officers engaging in misconduct were not disciplined nor provided with appropriate in-service training or retraining. Further constitutional violations by officers were therefore not discouraged, but condoned. As a result of these policies and practices, inmates such as Wilson were routinely denied adequate protection, care and safety.

78. Wilson's suicide was predictable and preventable. The Defendants' failure to predict and prevent this suicide stemmed from a well-settled practice at the Philadelphia Prison System/Philadelphia Department of Prisons and the HOC· to:

(a) improperly screen and recognize potentially suicidal inmates;

(b) improperly monitor and observe inmates;

( c) ignore known suicide hazards that existed in cells; and ( d) otherwise fail to maintain a safe environment for inmates under their control.

79. Defendants, City of Philadelphia, Commissioner Carney and William Lawton, Warden of HOC, were deliberately indifferent to the need for care to suicidal or emotionally disturbed inmates such as Wilson, the need to train responsible personnel to recognize the needs of inmates such as Wilson, and to provide or obtain necessary supervision and care for those inmates. These defendants failed to:

(a) create or implement an adequate suicide prevention system;

(b) properly monitor Wilson and to protect him from harming himself;

( c) failed to follow its own internal guidelines for monitoring inmates;

( d) failed to train officers and other employees who interacted with inmates to properly

screen and properly recognize potentially suicidal inmates; and

(e) failed to take other remedial measures such as installing surveillance cameras for continuous monitoring in holding cells susceptible to and/or having a high rate of suicide attempts

80. The right of inmates to adequate care, protection and supervision is a clearly established constitutional right under the Fourth and Fourteenth Amendments to the United States Constitution.

81. The above-described policies, customs and conduct of the City of Philadelphia, Commissioner Carney and William Lawton, Warden of HOC violated Wilson's Fourth and Fourteenth Amendment rights and constitute actual malice, willful misconduct, negligence, gross negligence and deliberate indifference to the safety and rights of Wilson. The said actual malice, willful misconduct, negligence, gross negligence and deliberate indifference were the proximate cause of Wilson's pain, suffering, and death.

82. By reason of the aforesaid violation of Wilson's rights, Plaintiffs are entitled to recover damages under 42 U.S.C. § 1983.

83. By reason of the aforesaid violation of Wilson's rights, Plaintiffs are entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## VI. COUNT III
## NEGLIGENCE AGAINST ALL DEFENDANTS

84. Plaintiffs incorporates by reference, paragraphs one through eighty-three (1-83) through this instant complaint.

85. Defendants, individually and/or by and through their agents, servants and/or employees were responsible for ensuring the safety, protection and well being of inmates in the

Philadelphia Prison System/Philadelphia Department of Prisons, including Wilson.

86. Defendants, individually and/or by and through their agents, servants and/or employees knew or should have known that Wilson was a candidate at risk for suicide.

87. Wilson's death and the injuries he suffered prior to his death were caused in whole or in part by the actual malice, willful misconduct, carelessness, recklessness and/or negligence of Defendants, by and through their agents, servants and/or employees.

88. The actual malice, willful misconduct, carelessness, recklessness and/or negligence of Defendants, individually and/or by and through their agents, servants and/or employees consisted of their:

a) failure to identify Gene Wilson as a candidate at risk for suicide;

b) failure to implement and follow safeguards for identifying candidates at risk for suicide;

( c) failure to create or implement an adequate suicide prevention system, particularly in light of the high rate of suicide attempts in Philadelphia Prison Systems/Philadelphia Department of Prisons

(d) failure to properly monitor and observe Wilson and to protect him from harming himself;

(e) failure to follow internal guidelines for monitoring inmates;

(f) failure to train officers and other employees who interacted with inmates to properly screen, properly recognize and properly monitor and observe potentially suicidal inmates;

(g) failure to otherwise remedy suicide hazards in prisons susceptible to and

having a high rate of suicide attempts, by installing surveillance cameras for
continuous monitoring;

(h) failure to take steps to prevent Wilson from attempting suicide;

( i) failure to adequately screen Wilson, followed by placing Wilson alone in a cell
with known suicide hazards, and purposely leaving him unchecked and
unobserved for 34 minutes contrary to protocol requiring checks every fifteen
minutes, all in light of the high rate of suicide attempts at Philadelphia Prison
Systems/Philadelphia Department of Prisons; and

(j) failure to otherwise use due and proper care under the circumstances.

89. As a direct and proximate result of the actual malice, willful misconduct,
carelessness, recklessness and/or negligence of Defendants City of Philadelphia, Blanche Carney,
Commissioner, Gerald May, Warden of CFCF, Nancy Giannetta, Warden of ASD, and William
Lawton, Warden of HOC, individually and/or by and through their agents, servants and/or
employees, Wilson attempted suicide by hanging himself in his cell on March 26, 2016, which
caused his death.

90. As a direct and proximate result of the negligence of all Defendants, jointly and
severally, as well as the negligence of their agents, servants and/or employees, Gene Wilson was
caused to experience:

(a) pain and suffering;

(b) fear and right;

( c) humiliation and embarrassment;

(d) economic loss; and

(e) death.

## VII.  COUNT IV
### WRONGFUL DEATH AGAINST ALL DEFENDANTS

91.  Plaintiffs incorporates by reference, paragraphs one through ninety (1-90) through this instant complaint.

92.  Plaintiff Rena Abran is the mother of the Decedent and brings this action pursuant to the Wrongful Death Act, 42 Pa. C.S. §8301. She claims all damages recoverable under that Statute, on behalf of herself and all other persons entitled to recover under law.

93.  By reason of the death of Gene Wilson, his survivors have been deprived of the decedent's support, comfort, society and services, all to their damages.

94.  By reason of the death of Gene Wilson, his survivors have incurred funeral, burial, medical, and estate administration expenses as well as other pecuniary losses.

95.  Gene Wilson's suicide and death were the direct and proximate result of the conduct of the Defendants in violating Wilson's constitutional rights as well as their actual malice, willful misconduct, carelessness and negligence as more fully set forth above.

96.  As a result of the actions of Defendants City of Philadelphia, Blanche Carney, Commissioner, Gerald May, Warden of CFCF, Nancy Giannetta, Warden of ASD, and William Lawton, Warden of HOC, as described above, Plaintiff Rena Abran, individually and in her capacity as Administratrix of the Estate of Gene Wilson, is entitled to recover pecuniary and other damages pursuant to 42 Pa. C.S. §8301.

## VIII.  COUNT V
### SURVIVAL AS TO ALL DEFENDANTS

97.  Plaintiffs incorporates by reference, paragraphs one through ninety-six (1-96) through

this instant complaint.

98. Plaintiffs bring this action pursuant to the Probate Estates and Fiduciary Code, 20 Pa. C.S. §§3372, 3373 and 42 Pa. C.S. §8302, commonly known as the Survival Act. She claims all damages recoverable under that statute by the Estate of Gene Wilson, on behalf of herself and all others entitled to recover under law, including but not limited to damages for Gene Wilson's loss of earnings and earning capacity, medical expenses, funeral expenses, damages for the extraordinary physical pain and suffering stemming from asphyxiation, strangulation and abrasions, emotional pain and distress, fear, anxiety and other mental suffering which Gene Wilson suffered prior to his death, and damages for Gene Wilson's loss of his ability to engage in normal activities and enjoy the normal pleasures of life.

99. As a direct and proximate result of the conduct of all defendants, Gene Wilson sustained damages as set forth above.

**WHEREFORE**, Plaintiffs demand judgment against the defendants, jointly and severally, on all causes of action as follows:

(1) Compensatory damages in an amount exceeding $1,000,000.00;

(2) Punitive damages;

(3) Attorneys' fees and costs of this action;

( 4) Such other and further relief as the court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury of this action.

TROY H. WILSON, ESQUIRE
TROY H. WILSON, LLC
ATTORNEY ID NO.:47024
215 S. BROAD STREET
2ND FLOOR
PHILADELPHIA, PA 19107
(215) 985-4566
COUNSEL FOR PLAINTIFF

## Verification

I, **Rena Abran,** verify that the statements made in the foregoing petition are true and correct. I understand that false statements herein are made subject to the penalties of Pa.C.S.A. Section 4904 relating to unsworn falsification at authorities.

_____
(Signature)

_____
(Type/print name)