UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| RENA ABRAN, | : |
| :--- | :--- |
| Plaintiff, | : |
| V. | : No. 2:18-cv-01107 |
| CITY OF PHILADELPHIA, ET AL, | : |
| Defendants. | : |

### *PLAINTIFF'S MEMORANDUM OF LAW*

**QUESTION:** Should this honorable court overrule defendant Corizon Health, Inc.'s objection to providing documents in its position related directly to the suicide death of the Plaintiff based on an alleged privilege under the Patient Safety and Quality Improvement Act of 2005 when defendant has failed to sustain its burden of proof relating to privilege and where all documentation is relevant to the decedent's death and where the Plaintiff has alleged civil rights violations and Monell violations under section 1983?

*Answered in the affirmative.*

**FACTS:**

Plaintiff propounded discovery onto the defendant Corizon Health Incorporated. In Corizon's response to said discovery requests (interrogatory 16) it readily admitted that it possessed an additional written report of some sort relating directly to the circumstances surrounding the Plaintiff decedent's suicide death at the House of Correction on the date in question. However, Corizon objected to providing this documentation and asserted that this documentation is somehow, "...privileged, confidential, and otherwise not discoverable as patient

safety work product", under the 2008 regulation implementing the Patient Safety and Quality Improvement Act of 2005. (See attached). Corizon has made no other supporting assertions, declarations or explanations concerning any alleged privilege concerning this documentation.

It must also be emphasized that despite Corizon's stated position that they have not taken the liberty of securing the contested documentation onto any sort of "Privilege Log and/or Supplemental Privilege Log" for the court's, potential, in camera review.

*LAW:*

Federal Rule of Civil Procedure 26(b)(1) provides that parties may discover any matter not privileged which is relevant to the subject matter involved in the pending action. In cases based upon a federal cause of action, the federal common law governs issues of privilege, even where the complaint states pendant state law claims. Fed.R.Evid. 501; Memorial Hosp. for McHenry County v. Shadur, 664 F.2d 1058, 1061 n. 3 (7th Cir. 1981). The principal claims underlying this case arise under the Civil Rights Act, 42 U.S.C. §1983.

"Patient Safety Work Product" privilege under the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b-22 ("PSQIA") is a statute that extends a privilege to, inter alia, "any data, reports, records, memoranda, analyses, or written or oral statements which . . . are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization." 42 U.S.C.A. § 299b-21(7)(A)(i)(I). Crawford v. Corizon Health Inc., Civil Action No. 17-113; District Court, WD Pennsylvania, 2018. Documents which are created in the regular course of a defendant's business can not be protected under PSQIA under any sort of work product immunity or privilege. Crawford v. Corizon Health Inc., Civil Action No. 17-113, District Court, WD Pennsylvania, 2018.

Generally, the doctrine of work product immunity applies to "material prepared by an

attorney acting for his client in anticipation of litigation". United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3rd. Cir. 1990). The doctrine shelters the mental processes of the attorney, providing a privileged area within which she can analyze and prepare her client's case. Holmes v. Pension Plan of Bethlehem Steel Corporation, 213 F.3d 124, 138 (3rd Cir. 2000). The critical inquiry in the Third Circuit as it relates to the defendant's objections of the Patient Safety and Quality Improvement Act of 2005 is a two part inquiry: first, whether "litigation could reasonably have been anticipated. In re Gabapentin Patent Litigation, 214 F.R.D 178, 183 (D.N.J. 2003). The second part of the inquiry is examining whether the documents were prepared "primarily for the purpose of litigation", Louisiana Municipal Police Employees Re. System v. Sealed Air Corporation, 253 F.R.D. 300, 306,-07 (D.N.J. 2008). "Documents created in the ordinary course of business, even if useful in subsequent litigation are not protected, as a matter of law, by the work-product doctrine. See Rockwell International, 897 F.2d at 1265-66; See also Crawford v. Corizon Health, Inc., supra.

**ARGUMENT:**

Corizon asserts that the documents at issue were submitted to Corizon's patient safety organization ("PSO"). However, this defendant fails to demonstrate, or to provide anything other evidence, other than a general/generic objection and bald assertion of privilege, without more, that the documents in question, and in their possession were, "assembled or developed . . . for reporting" to the PSO, which is an explicit requirement of the PSQIA. Crawford, supra. and See Dunn v. Dunn, 163 F. Supp. 3d 1196, 1210 (M.D. Ala. 2016) ("[Information that is not developed for the purpose of reporting to a patient safety organization does not become privileged merely because it is in fact reported to one"); Daley v. Teruel, __ N.E.3d __, 2018 IL App (1st) 170891 (June 28, 2018), ¶ 37 (emphasis added), citing Patient Safety Act Guidance, 81

Fed. Reg. 32,655, 32,656 ("[T]he critical inquiry is the purpose of creating the information, and the information will only be considered patient safety work product if it is created "for the purpose of reporting" to a patient safety organization.").

In the present matter Corizon has failed to meet its burden of demonstrating it is entitled to this privilege. Its generic assertion of privilege, without more, is insufficient as a matter of law to provide protection to Corizon. Moreover, Corizon has failed to assert any sort of work product privilege. As such this assertion must fail as it was effectively waived by the defendant. This court must grant the Plaintiff's request and order Corizon to provide the Plaintiff with any and all documents, either in its possession, or that they have transmitted to other entities, that relate to the suicide death of Gene Wilson which is the subject of the instant federal civil rights case.

Moreover, said defense objection, based on privilege must be overruled since Plaintiff has made valid Monell claims and this requested and contested information will allow Plaintiff to properly investigate and flesh out its Monell claims against any and all defendants.

In order for Plaintiff to meet his burden under Monell, Plaintiff will have to show either: 1) that the Defendant had an express policy, that when enforced, caused the constitutional deprivation; 2) that the Defendant had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute custom or usage within the force of law; or, 3) that the Plaintiff's constitutional injury was caused by a person with final policy making authority." See, for example, McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000). While Defendants' express written policies may be easily discovered through the usual discovery channels, the unofficial, defacto practices and customs within the jails are much more difficult to expose. Especially concerning the relationship between municipalities who run county jails and their private contractors who work, in tandem,

with said municipality.

In Jenkins v. DeKalb Co., Georgia, the court acknowledged the difficulty of discovering evidence of a jail's practices and customs in a civil rights case rooted in the death of an inmate. No. 06 C 1574, 2007 WL 781870 (N.D. Ga. 2007). The court noted that the inherent difficulty in discovering evidence of jailhouse customs and policies explains why "nearly every United States district court that has addressed the issue in the context of section 1983 litigation brought on behalf of jail or prison inmates has rejected the assertion of [the peer-review] privilege." Id. at 7. (collecting cases on this point). The Jenkins court went on to point out that: There are unique considerations at play in a post-death investigation ordered by a county jail that dramatically weaken the case for recognizing the privilege. A review of a deceased inmate is not the straightforward evaluation of medical care that occurs in the civilian context. The generation of post-death reports . . . may include details such as when jail officials notified medical officials of a particular problem, and whether there was a reason for non-medical officials to have monitored the situation more closely. The report may verify the fact that a jail official failed to notify medical personnel. Not only is this type of information "non medical," but it also may shed light, or at least raise an inference, of jail customs or policies. Through enacting section 1983, Congress used the power of the Fourteenth Amendment to set aside concerns over state sovereignty and authorize the federal courts to vindicate deprivations of liberty carried out under color of state law. 42 U.S.C. § 1983 ("Every person who, under color of any . . . custom . . . of any state . . . causes to be subjected, any citizen . . . to the deprivation of any rights . . . shall be liable to the party injured. . . ."). The interest in protecting the civil rights of individuals has led the courts to take caution before recognizing privileges in federal civil rights actions, "where any assertion of privilege must overcome the fundamental importance of a law meant to protect

citizens from unconstitutional state action.

Given the above this honorable court must protect the civil rights of the decedent, Gene Wilson as said rights outweigh any alleged and/or unproven and/or unfounded "privilege" asserted by the defendant Corizon Health Inc. Additionally, this court must allow the Plaintiff to use discovery to investigate information which is relevant to the civil rights complaint at hand and which may be used to assist the Plaintiff to assert its civil rights claims, including, but not limited to, its Monell claims. Monell v. Department of Social Services of the City of New York, et al., 436 US 658 (1978).

## *CONCLUSION:*

Essentially, Corizon has attempted to lodge this specific discovery gambit before the Third Circuit only to have the Third Circuit deny its request for privilege. (See Crawford, supra.). For that matter the facts of the Crawford case cited by Plaintiff as controlling are eerily similar to the facts surrounding the instant case. Both involve prison suicide deaths. Both involve investigations into the circumstances surrounding said prison suicide deaths. Both involve allegations of failure to properly care for said decedent inmate. Both also involve the Plaintiffs joining Corizon as a party defendant since Corizon, did, admittedly, contract with the jail to provide medical services, and its individual employees and/or health care providers working at the jail.

Based on the above this court must dismiss Corizon's request to object to providing this relevant and discoverable information since the Plaintiff attempts to obtain this information since it pertains directly the facts and circumstances surrounding the decedent Plaintiff's death and since Plaintiff is due this discoverable information since it has also made a Monell claim. Without receipt of this information Plaintiff will be, potentially, hamstrung in its ability to

discover all of the policies and practices utilized in reference to the care or lack thereof of a patient, like the Plaintiff, who was, admittedly, expressing suicidal ideation directly prior to his death. The defendant has failed to sustain its own burden of proving that there is a legitimate privilege against providing this discoverable information to the Plaintiff. Therefore under the holding of Crawford v. Corizon Health this court is compelled to render the same such ruling against the defendant and must order Corizon to provide any and all discoverable written materials to the Plaintiff, forthwith.

Respectfully submitted:

Troy H. Wilson, Esquire
Attorney for Plaintiff